T.C. Summary Opinion 2005-3

UNITED STATES TAX COURT

PANSY V. PANAGES, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16154-03S.          Filed January 4, 2005.

Pansy V. Panages, pro se.

<u>Paul K. Voelker</u>, for respondent.

COUVILLION, <u>Special Trial Judge</u>:  This case was heard pursuant to section 7463 in effect when the petition was filed.[1] The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

---

[1]    Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency of $6,161 in petitioner's Federal income tax for 2001, and a section 6662(a) penalty of $1,232.

The issues for decision are: (1) Whether petitioner's gambling activity amounted to a trade or business under section 162, thereby allowing her to deduct gambling losses on Schedule C, Profit or Loss From Business, of her Federal income tax return, and (2) whether petitioner is liable for the section 6662(a) penalty.

Some of the facts were stipulated. Those facts, with the exhibits annexed thereto, are so found and are made part hereof. Petitioner's legal residence at the time the petition was filed was Sparks, Nevada.

Before entering the flower business, petitioner completed her freshman year of high school and had some floral industry training. Petitioner then opened a flower shop in Reno, Nevada. The Flower Bucket Florist (flower shop) was organized as a corporation with petitioner as the sole stockholder. At the time of trial, petitioner's flower shop was open 12 hours a day, Monday through Saturday, and a few hours on Sunday. The flower shop paid petitioner a $66,310 salary during 2001.

In addition, petitioner operated as sole stockholder another business, F.B. Wholesale, Inc. (F.B. Wholesale), which was a wholesale market that purchased flowers from growers and brokers

and then resold the flowers to retail florists. The flower shop is one of F.B. Wholesale's customers. F.B. Wholesale paid petitioner a $7,200 salary during 2001. Finally, petitioner earned $26,160 in rent from two other businesses and $4,848 in the lease of a portion of her home to an elderly lady.

During the year in issue, petitioner was nearly 70 years of age and had begun making plans for retirement. As a result, she began training her two daughters to assume control of the flower shop; however, petitioner was still actively involved in the flower shop during 2001. Because petitioner planned to hand over management of the flower shop to her daughters, when she turned 65, she began looking for other ways to supplement her monthly Social Security benefits.

Petitioner believed she had a talent for winning at slot machines and began playing the machines at different locations. She eventually gambled almost exclusively at one grocery store (Smith's) that had the type of machines she liked, known as progressive machines. She began cultivating relationships with some of the grocery employees and started "tipping" them so they would alert her to what machines had not "paid out" recently. Petitioner usually played the machine or machines that had gone the longest without a winner. On her 2001 tax return, she deducted as business expenses $6,000 in tips she paid grocery employees for that information. Petitioner estimated she spent

20 to 25 hours a week playing the slot machines at Smith's. All of her gambling occurred after the flower shop was closed for the evening. Smith's was on the route petitioner traveled from the flower shop to her home.

During 2000, petitioner contacted an Internal Revenue Service (IRS) agent for information on how to file her income tax return as a professional gambler. Petitioner never sought information from other professional gamblers as to what was required to become a professional gambler for tax purposes. She was reluctant to publicize her status as a professional gambler because of a perceived stigma attached to that occupation. She discussed her tax status as a professional gambler only on one occasion with an IRS agent. She was advised by the agent to simply file a Schedule C with her income tax return and was advised of her responsibility to pay self-employment taxes on any profit realized. Because petitioner reported a loss on her 2001 return, she did not pay any self-employment taxes.[2]

On Schedule C of her 2001 return, petitioner listed "Professional Gambler" as her principal business and reported negative income of $5,050 and $8,129 in expenses for a total loss of $13,179. Petitioner kept records verifying the exact dates

---

[2] There is no evidence in the record that, in her quest to qualify as a professional gambler, petitioner inquired or received any information that a basic and fundamental requisite of a trade or business, including that of a professional gambler, is that the activity be engaged in for profit.

and amounts of her winnings, tips, and ATM charges and attached those records to her Schedule C.  Respondent agreed at trial that petitioner kept meticulous records.  Nevertheless, on her Form 1040, U.S. Individual Income Tax Return, petitioner listed her occupation as "Floral Manager".

For gambling to reach the level of a trade or business activity it must be "pursued full time, in good faith, and with regularity, to the production of income for a livelihood, and * * * not a mere hobby".  Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987).  The Supreme Court, in Groetzinger, held that a taxpayer who spent between 60 and 80 hours per week at dog races qualified as a professional gambler even though the taxpayer received income during the year from interest, dividends, capital gains, and salary earned before his job was terminated.  Likewise, a taxpayer who spent 35 hours a week at a horse track after losing his job as a salesman and who was seeking a new sales job qualified as a professional gambler for purposes of section 162.  Rusnak v. Commissioner, T.C. Memo. 1987-249.

Unlike the taxpayers in the cited cases, petitioner did not pursue gambling full time.  She gambled regularly but only after she finished working at her flower shop.  She frequently stopped at Smith's to play the slot machines on her way home from work.  As she reported on her tax return, her occupation was "floral manager".  The fact that petitioner earned income from

investments and rent does not in and of itself bar her from being a professional gambler. Petitioner, however, does not qualify as a professional gambler because her situation does not satisfy the test laid out by the Supreme Court. In <u>Commissioner v. Groetzinger</u>, <u>supra</u> at 33, the Court stated that, if a taxpayer "devotes his full-time activity to gambling, and it is his intended livelihood source, it would seem that basic concepts of fairness * * * demand that his activity be regarded as a trade or business". Petitioner's livelihood was not her winnings from slot machines; instead, her primary income came from her flower shop. Her gambling was not a trade or business under section 162. Consequently, petitioner may not deduct her losses on a Schedule C but must itemize them.[3]

Respondent determined a section 6662(a) penalty of $1,232 against petitioner. Section 6662(a) provides for a 20-percent addition to tax for any underpayment to which the section applies. Respondent determined that section 6662(b) applies to

_____

[3] If petitioner qualified as a professional gambler for purposes of sec. 162, she still could claim her losses only to the extent she had gains. Sec. 165(d); <u>Praytor v. Commissioner</u>, T.C. Memo. 2000-282. Because petitioner does not qualify as a professional gambler, it is not necessary to address whether petitioner may deduct ATM charges and tips to grocery store employees as expenses because her slot machine losses alone exceeded her winnings; therefore, she may not deduct the charges or tips. In the notice of deficiency, respondent disallowed all of petitioner's claimed deductions for gambling losses and other expenses in excess of gambling income. That computation is sustained by the Court.

petitioner because (1) petitioner was negligent or disregarded rules or regulations, or (2) petitioner's deficiency represented a substantial understatement of income tax.

Negligence is defined as "any failure to make a reasonable attempt to comply with the provisions of this title", and disregard includes "careless, reckless, or intentional disregard." Sec. 6662(c). The Court holds that petitioner was not negligent, nor did she disregard rules or regulations when she filed as a professional gambler on her 2001 tax return. She consulted with an IRS agent and inquired as to how to file her tax returns as a professional gambler. She then followed the guidelines of the agent, which were simply to include a Schedule C with her income tax return. The Court finds petitioner's testimony credible. Petitioner kept adequate records verifying her level of gambling activity and attached the records to her Schedule C. In addition, once petitioner received the notice of deficiency from respondent, she ceased her gambling activity while awaiting a decision by this Court. Petitioner's actions amount to reasonableness under section 6662(c), and her actions are not considered by the Court to be "careless, reckless, or intentional disregard."

Section 6662(b) also provides an addition to tax in the amount of 20 percent for any "substantial understatement of income tax." A substantial understatement is defined as the

greater of 10 percent of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A). Petitioner's understatement does amount to more than $5,000; however, she qualifies for a reduction of the understatement. Sec. 6662(d)(1)(B). Section 6662(d) provides for a reduction of the understatement if the taxpayer supplied the relevant facts affecting the tax treatment on the return and if there was a reasonable basis for the tax treatment. Sec. 6662(d)(2)(B)(ii). As previously discussed, petitioner attached adequate records to her 2001 income tax return, and she had a reasonable basis for believing she qualified as a professional gambler simply by filing a Schedule C. Therefore, petitioner's understatement for purposes of determining whether it amounts to a "substantial understatement of income tax" is reduced to zero. Sec. 6662(d)(1)(A). Petitioner is not liable for the section 6662(a) penalty.[4]

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered

under Rule 155.

---

[4] At trial, respondent agreed that, if the Court held that petitioner was not a professional gambler, she could deduct her gambling expenses as itemized deductions. In addition, respondent conceded that petitioner was also entitled to itemized deductions of $200, $458, and $1,376, respectively, for charitable contributions, taxes, and interest.